UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

COMMONWEALTH LAND AND TITLE
INSURANCE COMPANY,

      Plaintiff,

V.

JOHN D. HOWARD,
ELIZABETH B. HOWARD,
JEFFREY A. SINGLETON, AND
BRIDGET SINGLETON

      Defendants.

CIVIL ACTION NO. 5:14-24-KKC

OPINION AND ORDER

*** *** ***

This matter is before the Court on Plaintiff Commonwealth Land and Title Insurance Company's ("Commonwealth") motion for summary judgment [DE 18]. Commonwealth has already obtained a default judgment against John D. Howard ("Mr. Howard") [DE 17], so his liability to Commonwealth is not at issue. Elizabeth B. Howard ("Mrs. Howard," collectively, the "Howards") filed an answer to Commonwealth's Complaint in the form of a letter [DE 15], but did not file a response to Commonwealth's motion. Jeffrey A. Singleton ("Mr. Singleton") and Bridget Singleton ("Mrs. Singleton," collectively the "Singletons") filed a response opposing summary judgment. [DE 19].

Commonwealth seeks summary judgment against the Singletons on Count 7, Mr. Singleton on Count 1, and Mrs. Howard on Counts 1, 4, and 8. For the reasons stated herein, the Court will grant Commonwealth's motion for summary judgment.

## I.   BACKGROUND

This case arises out of multiple schemes designed to either fraudulently obtain mortgage loans or increase the amount of mortgage loans. Commonwealth, a title insurance company, brought this action to recover amounts it paid under policies held by insureds who were defrauded by the various schemes. There are four properties relevant to this motion, all located in Lexington, Kentucky: (1) 512 Euclid Avenue; (2) 261 Simpson Avenue, # 223, 323, and 132 (collectively, the "Three Condos"); (3) 344 Aylesford Place; and (4) 261 Simpson Avenue, # 329 ("Condo 329"). Commonwealth's claims against the Singletons relate only to 512 Euclid Avenue, but the claims against Mrs. Howard relate to all of the properties.

First, 512 Euclid Avenue became involved in this matter when the Singletons agreed to purchase the property from the Howards. To make the purchase, Mr. Singleton submitted an application (the "Loan Application") for a mortgage loan from Michigan Mutual, Inc. ("Michigan Mutual"). [DE 18-4, Exhibit 3, Loan Application.] Mr. Singleton eventually pled guilty to one count of conspiracy to commit wire fraud based on his conduct involving 512 Euclid Avenue. [DE 18-2, Exhibit 1, Plea Agreement.]  In the plea agreement, Mr. Singleton admitted, among other things, that "[a]lthough the property was worth approximately $150,000, Singleton and Howard falsely convinced the lender, Michigan Mutual, Inc., that the property was worth $225,000." [DE 18-2, Exhibit 1, Plea Agreement at 2.] This scheme was apparently designed to increase the size of the mortgage loan. The Singletons now assert that Mr. Howard carried out the scheme himself and they were merely innocent victims unaware of his unilateral actions. [DE 19 at 1-3.]

Michigan Mutual issued a $225,000 mortgage loan to enable the Singletons to purchase 512 Euclid Avenue. Mr. Howard, through his company American Closing Group, acted as the settlement agent for Michigan Mutual and Commonwealth at the closing. [DE

2

18-3, Exhibit 3, Answer to Interrogatory No. 9.] As evidenced by the Settlement Statement signed by both the Singletons and the Howards, the loan proceeds were transferred directly into Mr. Howard's bank account at the closing to satisfy the amount owed to the Howards in the sale. [DE 18-5, Exhibit 4, Settlement Statement.] The Singletons executed a promissory note (the "512 Euclid Note") for the same amount and granted Michigan Mutual a mortgage in 512 Euclid Avenue to secure the loan. [DE 1-5, Exhibit 5, Note.] The Howards executed a deed that conveyed 512 Euclid Avenue to the Singletons. While acting as Commonwealth's agent, American Closing Group issued title commitment no. 07-07-04059, which insured the 512 Euclid Note, to Michigan Mutual on behalf of Commonwealth (the "512 Euclid Policy") [DE 18-1 at 3]. The policy indicated that Mrs. Howard owned the property free of any liens. [DE 1, Complaint at ¶ 24.]

Unknown to Michigan Mutual or Commonwealth at the time the loan was issued, two prior mortgages already encumbered 512 Euclid Avenue. [DE 18-1 at 3.] As part of the scheme, Mr. Howard purposefully did not list the prior mortgages on the 512 Euclid Policy. [DE 18-1 at 3.] Mr. Howard's status as an agent of Michigan Mutual and Commonwealth allowed the closing to proceed despite the prior mortgages. [DE 18-1 at 3.] Thus, Michigan Mutual believed it was receiving, and Commonwealth believed it was insuring, a first priority mortgage on 512 Euclid Avenue. At some point after the closing, Michigan Mutual assigned the note to CitiMortgage, Inc. [DE 18-1 at 4.]

Mr. Howard told the Singletons that he would file the deed granting them 512 Euclid Avenue. [DE 18-3, Exhibit 3, Answer to Interrogatory No. 9.] Mr. Howard kept the loan proceeds, but never recorded the deed. [DE 19 at 4.]

Eventually, the Howards defaulted on the two prior mortgages on 512 Euclid Avenue [DE 18-1 at 4.] and the holders of those mortgages foreclosed on the property. [DE 18-1 at 4.] CitiMortgage, Michigan Mutual's assignee, was unable to recover in the foreclosure due to

3

its third priority status. [DE 18-1 at 4.] CitiMortgage submitted a claim to Commonwealth under the 512 Euclid Policy and Commonwealth paid it $174,000. [DE 18-1 at 4.] As part of the insurance settlement, the 512 Euclid Note was assigned to Commonwealth. [DE 1-8, Exhibit 8, Assignment.]

Commonwealth now seeks to recover its losses related to 512 Euclid Avenue. In Count 7, Commonwealth seeks to enforce the 512 Euclid Note against the Singletons. In addition, Commonwealth brought fraud claims against Mr. Singleton and the Howards in Count 1 based on the 512 Euclid Avenue transaction.

The Three Condos, 344 Aylesford Place, and Condo 329 are relevant only to Commonwealth's claims against Mrs. Howard. Mrs. Howard has admitted involvement in the fraudulent schemes related to those properties as well as liability on the Three Condo Notes by failing to respond to Commonwealth's requests for admission, see *infra* Section C at pp. 14-16, so it is not necessary to recite all of the facts related to those properties. It is sufficient to note that Commonwealth issued policies for each property. *See* [DE 18-1 at 5-8.] As a direct result of fraudulent schemes, Commonwealth paid $75,000 on each of the Three Condo policies, $125,000 plus $1,999 in expenses on a claim under the 344 Aylesford Place policy, and $84,796 plus $375 in expenses on a claim under the Condo 329 policy. Commonwealth seeks to recover these amounts from Mrs. Howard under Count 4. Commonwealth was assigned each of the Three Condo Notes and also seeks to enforce the Three Condo Notes against Mrs. Howard in Count 8.

## II.    STANDARD OF REVIEW

"Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

There is no genuine issue of material fact when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is incumbent upon the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248; *Andrews v. Hickman County, Tenn.*, 700 F.3d 845, 852 (6th Cir. 2012); *see also* Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## III.   ANALYSIS

### A.   The Singletons' Liability on the 512 Euclid Note (Count 7)

The Singletons assert failure of consideration as a defense to payment on the 512 Euclid Note, but do not dispute that Michigan Mutual dispersed the loan funds directly to Mr. Howard. [DE 19 at 6.] ("Despite the fact that the loan proceeds were wire transferred by Michigan Mutual, Inc. directly to Howard's bank account . . . ."). Based on the undisputed facts, namely that Michigan Mutual transferred the loan funds to Mr. Howard, the Singletons are liable on the 512 Euclid Note as a matter of law.  While the Singletons

themselves did not personally receive the loan proceeds, the 512 Euclid Note was nevertheless supported by consideration because the loan proceeds were transferred to Mr. Howard on the Singleton's behalf.

Under Kentucky law, a duly executed note is presumed to be supported by consideration. *Aspen Traditions, Inc. v. Kentucky Associated Gen. Contractors Self-Insurers' Fund*, No. 2009-CA-000733-MR, 2010 WL 3810643, at *3 (Ky. Ct. App. Oct. 1, 2010) (citing *Shrout's Adm'r v. Vaughan*, 204 S.W.2d 969, 970 (Ky. 1947)). The burden of overcoming the presumption falls on the party asserting a lack of consideration. *Id*; *see also* KRS 355.3-308(2).

In this case, the Singletons admit that they signed the promissory note [DE 18-3, Exhibit 2 at 13.], so they bear the burden of proving lack of consideration as a defense to payment. *Aspen Traditions*, 2010 WL 3810643 at *3. The Singletons assert there was a failure of consideration because "they never received possession or control of the mortgage loan proceeds or the conveyance and ownership of the Euclid Drive property as a consequence of Howard's fraud and deceit." [DE 19 at 6.]  This argument fails to establish that the note lacked consideration.

A First Circuit case, *Wheeler v. Blumling*, 521 F.3d 1 (1st Cir. 2008), involved a similar situation in which a borrower's bond broker misappropriated funds that were meant to be used to purchase a bond. Following the execution of a note, the lender, acting in accordance with the borrower's instructions, distributed a majority of the loan funds directly to the bond broker. *Id.* at 3. The bond broker then embezzled the loan funds and failed to pay for the bond. *Id.* The lender sued the borrower's guarantor to recover the loaned funds, and the guarantor raised a frustration of purpose defense, arguing that he should be excused from liability on the note because "the value to him of the loan secured

6

by the guaranty was destroyed by the defalcations of the bond broker." *Id*. The Court applied Kentucky law and held the guarantor liable on the note, stating, "Actually, the value of the loaned money was not affected, but the proceeds of the loan were lost by the borrower." *Id*. at 3-4. The Court further stated that the obligation to repay borrowed money does not depend on the success of the venture on which the borrower spent the money. *Id*. at 4.

While the Singletons' defense is styled as lack of consideration rather than frustration of purpose, they make the same substantive argument that the guarantor in *Wheeler* made: that they should not be liable because they received no value from the transaction. Like in *Wheeler*, Mr. Howard's theft of the loan proceeds and failure to convey ownership of 512 Euclid Avenue to the Singletons does not excuse them from liability on the note.

First, the loan proceeds constitute consideration notwithstanding Mr. Howard's theft. The Singletons each signed the Settlement Statement, which recited that it was a "true and accurate statement" of all "disbursements made on my account." [DE 18-5, Exhibit 4, Settlement Statement at 3.] As the Singletons recognize in their Response, the Settlement Statement shows that the loan proceeds were transmitted to Howard. [DE 19 at 6.] Thus, the Singletons understood that the money was going to Mr. Howard and assented to that arrangement when they signed the document. The Settlement Statement, most notably the "on my account" language, shows that the loan proceeds were transmitted to Mr. Howard on behalf of the Singletons to satisfy the amount due to the Howards, the sellers in the transaction. Therefore, the Singletons cannot now claim that the loan proceeds were not consideration simply because they were transferred to Mr. Howard. As the Court noted in *Wheeler*, the fact that the loan proceeds were sent to a third party and lost does not affect their value as consideration. 521 F.3d at 3.

7

Second, the fact that the Singletons never acquired title to 512 Euclid Avenue does not mean the 512 Euclid Note lacked consideration. 512 Euclid Avenue is analogous to the bond in *Wheeler*. The Singletons, like the guarantor, are not excused from liability simply because the purpose for which they borrowed the money was not achieved. The money Commonwealth dispersed to Mr. Howard is the consideration. The Singletons became liable on the note when Commonwealth dispersed the money. Whether that money was successfully used for its intended purpose after the dispersion does not affect the Singletons' liability on the note. For these reasons, the 512 Euclid Note was supported by adequate consideration.

The Singletons further assert that they should not be liable on the note because Commonwealth put Mr. Howard, its agent, in a position where he was able to steal the loan proceeds. [DE 19 at 7-9.] They rely on *Richards v. Attorneys' Title Guaranty Fund, Inc.*, 866 F.2d 1570 (10th Cir.) and § 261 of the Restatement (Second) of Agency. Not only does this argument run contrary to binding Kentucky precedent, but neither authority cited by the Singletons supports their position.

Under Kentucky law, for a principal to be held responsible for the misconduct of an agent, the wrongful act "must have been done, not only in the course of the servant's employment, but also with a view to the furtherance of his employer's business, and not for a purpose personal to himself." *Brooks v. Gray-Von Allmen Sanitary Milk Co.*, 277 S.W. 816, 818 (1925). In *Brooks*, an agent overcharged a customer and retained the extra money for himself. *Id.* at 817. The Court held that the principal was not liable to the customer because the agent was acting solely for his own benefit. *Id.* at 819. Likewise, Mr. Howard did not act in furtherance of Commonwealth's business when he stole the loan funds, but solely for his own benefit. Therefore, Commonwealth is not responsible as a principal for Mr. Howard's acts.

Furthermore, *Richards* is inapplicable given the present circumstances. In *Richards*, the Court held a principal liable for an agent's acts based on the rule that "when one of two *innocent* persons must suffer from the acts of a third, he must suffer who put it in the power of the wrongdoer to inflict the injury." 866 F.2d at 1572-73 (emphasis added). Here, the Singletons cannot be considered "innocent persons" given Mr. Singleton's admission that he "knowingly and voluntarily" conspired with Mr. Howard to defraud the lender. [DE 18-2, Exhibit 1, Plea Agreement at 1.] Therefore, *Richards* is inapplicable to the facts of this case.

Lastly, the Singletons also cite § 261 of the Restatement (Second) of Agency, which provides:

> A principal who puts a servant or other agent in a position which enables the agent, *while apparently acting within his authority*, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

Restatement (Second) of Agency § 261 (emphasis added). The Singletons knew Mr. Howard was defrauding Commonwealth for his own benefit, so he was not "apparently acting within his authority" and § 261 is inapplicable. Moreover, the very next section, § 262 of the Restatement, undermines the Singleton's reliance on § 261 entirely. Under § 262, "if a third person should know or otherwise has notice that an agent is acting for his own purposes or is otherwise violating his authority, the principal is not liable." Restatement (Second) of Agency § 262 cmt. c (1958).Thus, the Singletons cannot use agency principles to shift the loss onto Commonwealth.

The 512 Euclid Note was supported by adequate consideration. Mr. Howard's theft of that consideration does not relieve the Singletons of their obligation on the note or push the loss back onto Commonwealth.

**B.     Fraud Claim Against Mr. Singleton (Count 1)**

Commonwealth is seeking summary judgment in the amount of $75,000 on its fraud claim against Mr. Singleton. [DE 18-1 at 17.] ("Commonwealth as a consequence is entitled to a judgment for $75,000 as a matter of law."). Mr. Singleton's plea agreement establishes facts that he is collaterally estopped from challenging. Those facts are sufficient to support summary judgment in favor of Commonwealth on its fraud claim because no reasonable juror could return a verdict in Mr. Singleton's favor, meaning there is no genuine issue for trial.

A guilty plea is an "admission of all the elements of a formal criminal charge." *United States v. Skinner*, 25 F.3d 1314, 1316 (6th Cir. 1994). Therefore, "when a defendant pleads guilty, he admits and is estopped from relitigating the material facts alleged in the information or indictment, and a plaintiff is entitled to introduce pleas from criminal cases in subsequent civil cases to establish 'all matters of fact and law necessarily decided by the conviction.'" *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 622 (E.D. Ky. 2011) (citing *Emich Motors Corp. v. Gen. Motors Corp.,* 340 U.S. 558, 569 (1951)).

Mr. Singleton's plea agreement establishes that he "knowingly and voluntarily" entered into a conspiracy with Mr. Howard to commit wire fraud. [DE 18-2, Exhibit 1, Plea Agreement at 1.] Importantly, the plea agreement states: "Although the property was worth approximately $150,000, Singleton and Howard falsely convinced the lender, Michigan Mutual, Inc., that the property was worth $225,000." [DE 18-2, Exhibit 1, Plea Agreement at 2.] Mr. Singleton admitted these facts by entering into the plea agreement and is now estopped from denying them. *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. at 622.

To prevail on a fraud claim, a plaintiff must prove six elements:

> (1) That defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and

10

as a positive assertion; (4) that he made it with the intention
that it should be acted upon by plaintiff; (5) that plaintiff acted
in reliance upon it; and (6) that he thereby suffered injury.

*In re Sallee*, 286 F.3d 878, 895-96 (6th Cir. 2002). The fact that Mr. Singleton falsely
represented that 512 Euclid Avenue was worth $225,000 when in reality it had a value of
only $150,000 at the time of the misrepresentation warrants summary judgment because it
satisfies all six elements of a fraud claim.

As an initial matter, the Loan Application itself stated that the representations
contained therein, including the $225,000 value, were being made both to Michigan Mutual
and its "agents," "insurers," and "assigns," which includes Commonwealth. [DE 18-4,
Exhibit 3, Loan Application at 3.] Mr. Singleton does not argue that the representations
were not made to Commonwealth. Hence, there is no question that the representation at
issue was made to Commonwealth as well as Michigan Mutual.

The first element of a fraud claim requires the defendant to have made a material
misrepresentation. *In re Sallee*, 286 F.3d at 895-96. A fact is material when it "affects the
conduct of a reasonable person and is likely an inducement of the contract." *Id.* at 897. Mr.
Singleton argues his representation that 512 Euclid Avenue was worth $225,000 would not
have "been very material to the making of the mortgage loan by Michigan Mutual, Inc."
[DE 19 at 12.] Mr. Singleton asserts that "[t]he financial circumstances of the Singletons
were the most material and the most important factor in determining their eligibility and
their qualification for the mortgage loan." [DE 19 at 12.]

Mr. Singleton's arguments regarding the materiality of his admitted
misrepresentation are unavailing. A plaintiff is not required to prove that a defendant's
misrepresentation was the "*most* material" representation made to it. The plaintiff simply
needs to show that the defendant made "*a* material misrepresentation." *In re Sallee*, 286
F.3d at 895-96 (emphasis added). Here, it is established beyond dispute that Mr. Singleton

falsely stated that 512 Euclid Avenue was worth $225,000. No reasonable jury could find that Mr. Singleton's inflation of 512 Euclid Avenue's value by $75,000 was not a material misrepresentation. This was no "slight disparity" [DE 19 at 12.], but rather a 50% overstatement of the value of the property. It is clear that this misrepresentation affected Michigan Mutual's conduct and induced it to lend because it issued a $225,000 loan – the precise amount that Mr. Singleton misrepresented to it. 512 Euclid Avenue was security for the loan and it is evident that Michigan Mutual loaned up to what it believed was the full value of the property. Based on these facts, no reasonable jury could find that Mr. Singleton's actions were immaterial. Therefore, there is no genuine issue of fact regarding the materiality of Mr. Singleton's misrepresentation.

The second and third elements of a fraud claim require that the misrepresentation was false and the defendant knew it was false when he made it. *In re Sallee*, 286 F.3d at 895-96. Mr. Singleton's admission in his plea agreement that he "falsely convinced" Michigan Mutual that the property was worth $225,000 satisfies both of these elements.

Fourth, a plaintiff must prove that the defendant made the misrepresentation "with the intention that it should be acted upon by plaintiff." *In re Sallee*, 286 F.3d at 895-96. Such intent can be shown when the defendant knows the purposes of the plaintiff's inquiry when he makes the misrepresentation. *Harlin v. Calvert's Adm'x*, 70 S.W.2d 524, 528 (Ky. 1934). Here, Mr. Singleton undoubtedly knew that Michigan Mutual sought the value of the home to determine how much it would be willing to loan him. The only logical conclusion a jury could reach is that Mr. Singleton intended for Michigan Mutual, and by extension Commonwealth, to act upon the misinformation. *In re Sallee*, 286 F.3d at 895-96.

The fifth element requires that the plaintiff acted in reliance upon the misrepresentation. In the plea agreement, Mr. Singleton admitted that the false statement "caused lenders," including Michigan Mutual, to issue loans. [DE 18-2, Exhibit 1, Plea

12

Agreement at 3.] By causing Michigan Mutual to issue the loan, Mr. Singleton also caused Commonwealth to insure the loan, for without the loan Commonwealth could not have issued the 512 Euclid Policy. Again, the fact that the loan was made for exactly $225,000, and then insured for that amount, clearly shows that both Michigan Mutual and Commonwealth relied on Mr. Singleton's misrepresentation.

Finally, the sixth element of a fraud claim requires the plaintiff to prove that he suffered an injury due to the misrepresentation. *In re Sallee*, 286 F.3d at 895-96. "To be actionable the alleged misrepresentation must not only have induced the recipient's reliance, but must also have caused the recipient's loss." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 553 (Ky. 2009). To satisfy this element, the plaintiff must show that the misrepresentation was a proximate cause of the plaintiff's loss, meaning that it was a "substantial factor in bringing about the plaintiff's harm." *Id.* (quoting *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980)). A misrepresentation is a substantial factor if it would "lead reasonable men to regard it as a cause" of the plaintiff's loss. *Id.*

This final element is satisfied because reasonable jurors would undoubtedly regard Mr. Singleton's $75,000 misrepresentation as a cause of Commonwealth's damages in the same amount. The exaggerated value led Commonwealth to insure a loan of $225,000 rather than $150,000. Therefore, the misrepresentation was certainly a "substantial factor," if not the only factor, that caused Commonwealth to lose an additional $75,000 when it paid the claim on the 512 Euclid Policy.

Mr. Singleton's other arguments against summary judgment on the fraud claim likewise fail. Mr. Singleton's assertion that Mr. Howard was the true mastermind behind the scheme and he was merely an innocent victim with no hand in the fraudulent $225,000 appraisal, *see* [DE 19 at 11-12, 14], is irrelevant. Mr. Singleton's plea agreement plainly contradicts this assertion. [DE 18-2, Exhibit 1, Plea Agreement at 1-2.] ("…Singleton and

13

Howard falsely convinced the lender, Michigan Mutual, Inc., that the property was worth $225,000."). Regardless of what actually transpired, Mr. Singleton signed the plea agreement and is estopped from relitigating his admissions.

Furthermore, Singleton's arguments that Mr. Howard altered the loan application to show that the Singletons intended to use it as their primary residence [DE 19 at 13.], and that Mr. Singleton himself did not give Michigan Mutual a "bogus" lease [DE 19 at 13-14.], do not matter because Mr. Singleton's clear admission of fact about the falsified value of 512 Euclid Avenue is alone sufficient for summary judgment.

Finally, the stipulation that 512 Euclid Avenue had a current fair market value of $210,000 at the time the plea agreement was signed [DE 18-2, Exhibit 1, Plea Agreement at 2.] has no effect. The agreement provides that 512 Euclid Avenue was "worth approximately $150,000" in 2007 when Mr. Singleton made the false representation. [DE 18-2, Exhibit 1, Plea Agreement at 2.] A stipulation as to the fair market value of the property nearly four years later, which appears to have been made only for sentencing purposes given the reference to a "guideline loss figure" [DE 18-2, Exhibit 1, Plea Agreement at 2.], is of no consequence.

In conclusion, there is no genuine issue of material fact regarding Commonwealth's fraud claim. As such, Commonwealth is entitled to judgment as a matter of law because the undisputable fact that Mr. Singleton falsely represented to the lender that 512 Euclid Avenue was worth $225,000 fulfills all the requirements of a fraud claim. Accordingly, the Court will grant Commonwealth summary judgment on its fraud claim in the amount of $75,000.

**C.       Claims against Mrs. Howard (Counts 1, 4, and 8)**

Commonwealth asserts fraud claims against Mrs. Howard in Counts 1 and 4. In Count 8, Commonwealth asserts that Mrs. Howard is liable as the maker on the Three Condo Notes. Commonwealth is entitled to summary judgment on all three counts.

Mrs. Howard failed to respond to Commonwealth's motion for summary judgment. This failure by itself does not entitle Commonwealth to summary judgment. *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992). Commonwealth must still show that there is no genuine issue for trial and it is entitled to judgment as a matter of law. *Id.* However, the Court is not required to comb the record as an advocate of the non-moving party. *Id.*

Mrs. Howard also failed to respond to Commonwealth's requests for admission. [DE 18-7, Exhibit 6, Discovery Requests.] As a result of this failure, Ms. Howard is deemed to have admitted the facts contained in the requests for admission. FED. R. CIV. P. 36(a)(3). Her admissions are "conclusively established" for the purpose of this case. FED. R. CIV. P. 36(b). Matters deemed admitted from a failure to respond to requests for admissions can serve as a basis for granting summary judgment. *Liberty Steel Products, Inc. v. Acore Door Co.*, No. 4:05CV1124, 2006 WL 1473509, at *2 (N.D. Ohio May 23, 2006) (citing *Lovejoy v. Owens*, 86 F.3d 1156 (Table), No. 94-4224, 1996 WL 287261, *1 (6th Cir. May 28, 1996)).

In support of summary judgment, Commonwealth points to a number of facts Mrs. Howard is deemed to have admitted. Relevant to her liability on the Three Condo Notes, Mrs. Howard admitted that she signed the Three Condo Notes [DE 18-7, Exhibit 6, Requests for Admission 3, 4, 5.], the Three Condo Notes are authentic documents that have not been altered or forged [DE 18-7, Exhibit 6, Requests for Admission 11, 12, 13.], she failed to make payments on the Three Condo Notes [DE 18-7, Exhibit 6, Requests for Admission 7, 8, 9.], and finally that she is liable under the Three Condo Notes [DE 18-7,

Exhibit 6, Requests for Admission 15, 16, 17.] In addition, Mrs. Howard admitted that she participated in the fraudulent schemes that related to the acquisition and financing of 512 Euclid, 344 Aylesford, Condo 329, and the Three Condos [DE 18-7, Exhibit 6, Request for Admission 1.]

While Mrs. Howard failed to respond to the requests for admission, she did file an answer to the complaint in the form of a letter. [DE 15.] In the letter, she indicated that she could not afford a lawyer. She denied involvement in the scheme and asserted that her signatures on the Three Condo Notes were forgeries. Ms. Howard's answer to the complaint gives the Court pause because she specifically denied the same facts that Commonwealth now seeks to establish.

However, this Court has found several cases from District Courts within this Circuit in which facts were conclusively established based on a defendant's failure to respond to a request for admission even though the defendant previously filed an answer to the complaint. *DIRECTV, Inc. v. Tomes,* No. CIV.A. 304CV-561-M, 2005 WL 2218040 (W.D. Ky. Sept. 13, 2005); *Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*, No. 4:08CV2830, 2010 WL 395212 (N.D. Ohio Jan. 22, 2010); *Creedon v. Howle,* 8 F.R.D. 92 (N.D. Ohio 1948). This Court is not aware of any case law stating that a failure to respond to a request for admission cannot conclusively establish a fact when the defendant has previously filed an answer denying the same fact. Therefore, the facts that Mrs. Howard admitted are indeed conclusively established for purposes of this case. FED. R. CIV. P. 36(b).

Based on the facts conclusively established, Commonwealth is entitled to judgment as a matter of law on its claims for fraud and liability on the notes. Even without her admissions, Commonwealth would still be entitled to judgment on the Three Condo Notes because, despite her assertion of forgery in her letter, Mrs. Howard failed to produce evidence sufficient to rebut the presumption found in KRS 355.308(1) that her signature on

the notes was authentic and authorized. *In re Vickers*, 2013 WL 1619814, at *5 (Bankr. E.D. Ky. 2013). Therefore, the Court will grant summary judgment against Mrs. Howard on Counts 1, 4, and 8.

## IV.   CONCLUSION

For the reasons stated above, there are no genuine issues of material fact related to the counts on which Commonwealth seeks summary judgment. Commonwealth is entitled to judgment as a matter of law on each count. Accordingly, the Court HEREBY ORDERS that Commonwealth's motion for summary judgment against the Singletons on Count 7, Mr. Singleton on Count 1, and Mrs. Howard on Counts 1, 4 and 8 [DE 18] is GRANTED.

Dated March 29, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY